IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOWARD BROWN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TD BANK, N.A., | : | |
| AGNUS LIN, | : | |
| ROBERT MINDICK, | : | |
| RONALD MATTHEW, and | : | |
| EVE BADECKI | : | NO. 15-5474 |

MEMORANDUM

Dalzell, J.                                                                April 4, 2016

## I.  Introduction

We consider here the defendants' partial motion to dismiss. Plaintiff Howard Brown brings twelve claims against defendants TD Bank, N.A. ("TD Bank") and several of its employees, alleging various violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act ("PHRA"). Brown alleges that TD Bank and the individual defendants -- Agnus Lin, Robert Mindick, Ronald Matthew, and Eve Badecki -- discriminated against him based on his race and then retaliated after he complained.

TD Bank and the individual defendants move to dismiss Counts VII, VIII, and XII. The individual defendants also move to dismiss Counts I, III, V, VII, X, XI, and XII. Brown opposes the defendants' motion. For the reasons explained below, we will grant the defendants' motion to dismiss Counts VII, VIII and XII in their entirety, and Count I with respect to the individual defendants.

II.    <u>**Standard of Review**</u>

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. <u>See</u> Fed. R. Civ. P. 12(b)(6); <u>see also</u>, <u>e.g.</u>, <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.

As the Supreme Court stresses, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action…do not suffice." <u>Id.</u> Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

In the wake of <u>Twombly</u> and <u>Iqbal</u>, our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). In deciding a motion to dismiss, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss

if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White

Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the first amended complaint.

### III.     **Factual Background**

Defendant TD Bank hired plaintiff Howard Brown in April of 2011 as an assistant vice-

president in its asset-based lending and syndications department. First Am. Compl. ¶ 18. In June

of 2013, after positive performance reviews in 2011 and 2012, Brown was promoted to vice-

president, credit portfolio manager of the middle market lending department. Id. at ¶¶ 19-20.

During the first few months after his promotion, Brown was supervised by defendant Robert

Mindick and also by Damien Ghee, who is not a party in this case. Id. at ¶ 21. Brown alleges that

Mindick began to subject him to "discriminatory harassment" shortly after his promotion. Id. at ¶

22. Brown is black and Mindick is white. Id. at ¶¶ 16, 21.

Brown alleges that Mindick treated him "in a rude and condescending manner,

selectively enforced policies against him, failed to invite him to important meetings for accounts

that he was working on, and issued him his first negative performance evaluation," and that

Mindick did not treat Brown's non-black co-workers this way. Id. at ¶ 23.

In December of 2013, Brown expressed his concerns about the alleged discrimination and

harassment to Mindick and questioned why he was being treated differently than his non-black

co-workers. Id. at ¶ 24. Mindick responded that he was afraid Brown "would punch him in the

face," even though Mindick had no reason to believe that Brown was violent or aggressive,

thereby implying to Brown that he was aggressive or violent because of his race. Id. at ¶ 25.

In January of 2014, Damien Ghee moved to a new position at TD Bank and defendant

Agnus Lin began co-supervising Brown. Id. at ¶ 26. Brown confided in Lin that he believed

Mindick was exhibiting prejudice toward him. Id. at ¶ 27. Lin confirmed that Mindick treated

him more harshly than his non-black co-workers, and that Mindick appeared to be "watching"

him. Id. While being supervised by Lin and Mindick, Brown claims he continued to be subjected

to increased hostility and harassment from management, including both Lin and Mindick. Id. at ¶

28.

Brown alleges that Lin placed him on an unwarranted performance improvement plan

("PIP" or "plan") only one month after she began supervising him and that the plan included

inaccurate and false accusations. Id. at ¶ 29. He also alleges that, one week before Lin placed

him on the PIP, he complained to defendant Eve Badecki that his supervisors were

discriminating against him and treating him unfairly. Id. at p.7 n.4. He alleges that management

treated him less favorably than his non-black co-workers by

> failing to provide him with the proper support, refusing to pay for
> his professional memberships, refusing to provide him with more
> lucrative accounts, selectively forcing him to account for his hours,
> failing to provide him with additional time to complete projects
> (when needed on a rare occasion), refusing to respond to his e-
> mails, making false accusations against him to destroy his
> credibility and put his job in jeopardy, [and] changing his
> assignments and/or adding tasks to his assignments without giving
> him proper time to complete said assignments.

Id. at ¶ 29.

On March 11, 2014, Brown's attorney emailed a draft of Brown's original charge of

discrimination to TD Bank's management, including the individual defendants and Vincent Vita

in the email. Id. at ¶ 31. The email stated that if he did not hear from TD Bank or its counsel on

or before March 24, 2014, Brown would file his draft charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations

Commission ("PHRC"). Id. at ¶ 31. Brown's original charge named defendants Lin, Mindick,

and Badecki. <u>Id.</u> at ¶ 32. Badecki never investigated Brown's complaints as memorialized in his counsel's email. <u>Id.</u> at ¶ 57.

About one day later, on March 12, Brown received a new PIP, which he claims also contained false and inaccurate information. <u>Id.</u> at ¶ 34. He received the new plan during a meeting with defendant Ronald Matthew. <u>Id.</u> at ¶ 35. During the meeting, Matthew was very hostile, belittling and ridiculing him. <u>Id.</u> About two weeks later, on or about March 27, 2014, Brown met with Matthew and Lin. <u>Id.</u> at ¶ 36. During this meeting, Matthew asked Brown, "How do you feel we are discriminating against you?" and Brown felt intimidated and uncomfortable since he thought the meeting was about the PIP, and he had not been told they would be discussing his discrimination claims. <u>Id.</u> at ¶ 37. Matthew asked Lin if Brown had kept up with his credit reports, and Lin responded that "unfortunately" there were no credit reports due. <u>Id.</u> at ¶ 38. Brown believes that since they were disappointed that they could not reprimand him based on his credit reports, Lin and Matthew instead criticized him for not having completed certain projects one week ahead of schedule. <u>Id.</u> at ¶ 39. Matthew told Lin to assign more work to Brown and to revise the PIP. <u>Id.</u>

On or about April 7, 2014, Brown emailed Badecki to complain about Matthew and Lin's conduct during the March 12 meeting and to rebut his revised PIP from March 27. <u>Id.</u> at ¶ 40. In his email, Brown told Badecki that he did not think it was appropriate to discuss his prior discrimination complaints during a meeting about his work performance. <u>Id.</u> at ¶ 41. Badecki replied that she would look into the matter, but she never followed up with him. <u>Id.</u> at ¶ 42.

On or about April 10, 2014, Brown had another PIP meeting with Matthew and Lin. <u>Id.</u> at ¶ 43. Lin gave Brown a new plan and complained that he had made typographical errors in one of his draft reports. <u>Id.</u> Brown acknowledged that his draft did include some errors "but indicated

that everyone make[s] mistakes and politely pointed out a few typographical errors that Defendant Lin had made in the PIP that she had just given him." Id. at ¶ 43. The meeting ended cordially and Brown worked the remainder of the day. Id. at ¶ 44.

Lin then complained to Badecki that Brown had discriminated against her based on her national origin because he had pointed out spelling and grammatical errors in the PIP that she gave him. Id. at ¶ 45. According to Brown, Lin is "Asian-American." Id. at ¶ 26. Brown avers that Lin only made her complaint about the alleged discrimination after she had received a draft of his EEOC charge naming her as one of the employees discriminating against him and after she had discussed his complaints with Badecki. Id. at ¶ 46.

On or about April 15, 2014, Badecki called Brown into a meeting and told him it was about an investigation regarding his PIP. Id. at ¶ 47. During that meeting, Brown was asked if he had made any derogatory or discriminatory remarks about Lin during the April 10 meeting. Id. at ¶ 48. Brown denied that he had. Id. Badecki then told him that he was being suspended because of the investigation into what occurred at the April 10 meeting with Lin and Matthew. Id. at ¶ 50. Badecki had already drafted a suspension letter for Brown before she asked him to attend the April 15 meeting. Id. at ¶ 51.

After informing Brown of his suspension, Badecki permitted him to proceed to his desk without an escort. Id. at ¶ 52. But "before Plaintiff could barely even get to his desk, Defendant Badecki approached Plaintiff, closed his laptop and indicated that he needed to leave." Id. Brown gave Badecki his Blackberry and began clearing items from his desk, including some personal papers that he placed in his bag. Id. at ¶ 53. Badecki accused Brown of trying to take loan documents. Id. at ¶ 54. Brown tried to tell Badecki that he had taken only his personal papers, but

Badecki insisted that he give her his bag. Id. at ¶ 55. He politely refused, since it was his personal property. Id.

Badecki sent a suspension notice to Brown's attorney soon thereafter, stating that Brown was being suspended for failing to cooperate with the investigation, attempting to dispose of confidential documents, and placing a large number of other documents that appeared to be TD Bank property into his bag before leaving the building. Id. at ¶ 56.

On or about April 23, 2014, Brown's attorney emailed defendants indicating that Brown would cooperate with the investigation, but that he believed the April 15 accusations were in retaliation for Brown's prior complaints of discrimination and retaliation. Id. at ¶ 58. On or about April 29, 2014, Brown filed a charge of discrimination with the EEOC. Id. at ¶ 59. Brown's attorney also emailed a copy of the charge to defendants' attorney. Id. at ¶ 60. Several hours later, defendants' attorney emailed Brown's attorney "and threatened to file a lawsuit against" Brown if he did not return all of TD Bank's documents, data, property, materials, documents, records, or information by the close of business the next day. Id. at ¶ 61.

On or about May 1, 2014, TD Bank fired Brown. Id. at ¶ 62. TD Bank's termination letter stated that it was firing him "based upon the results of [its] investigation into the incidents of April 10, 2014 and April 15, 2014." Id. at ¶ 63 (quoting from the termination letter). The termination letter characterized these incidents as Brown making discriminatory remarks to Lin, violating TD Bank policy by refusing to cooperate in its investigation of those remarks, attempting to improperly dispose of confidential documents, and removing TD Bank documents and other property from the workplace after being suspended. Id.

According to Brown, "Defendants attempted to have [him] sign an affidavit requesting that [he] agree to demands that would, among other things, prevent him from ever disseminating

documents or information relating to his work (with no exception for providing information to the EEOC) and prevent him from ever contacting" TD Bank's clients or customers, which he believes "would bar him from possibly obtaining information relevant to his EEOC charge." Id. at ¶ 64. Brown agreed to sign an affidavit if the parties could agree on terms addressing those concerns. Id. at ¶ 65. No such terms were agreed to, and TD Bank sued Brown for conversion in the Court of Common Pleas of Philadelphia County on August 22, 2014. Id. at ¶ 66.

In the action filed in the Court of Common Pleas, TD Bank alleged that Brown's employment with it gave him access to confidential and sensitive information such as loan applications, tax returns, account statements, credit reports, customer appraisal documentation, legal and court documents, title reports, and propriety information relating to TD Bank's business operations and strategy. Defs.' Partial Mot. to Dismiss ("Partial MTD") Ex. C at 5-6. TD Bank claimed, with respect to Brown's conduct when clearing out his desk, that he "improperly disposed of some confidential customer documents, and began placing into a bag a large number of documents, many of which appeared to contain confidential and proprietary information." Id. at 6.

TD Bank further alleged that Brown refused Badecki's request to return the documents in his bag "and fled the workplace," and that he "wrongfully retained" a TD Bank credit card and an RSA token (which provides the holder with remote access to TD Bank's electronic systems). Id. TD Bank also claimed that it had evidence that Brown retained documents based upon emails from his counsel that purported to return certain documents and emails Brown sent from his TD Bank email account to his personal email account containing TD Bank's documents. Id. at 7-8. Because Brown would not sign TD Bank's requested certification that he had returned all of TD

Bank's confidential or propriety documents and had not improperly disseminated such material, TD Bank sued him for conversion. Id. at 8-9.

Brown properly exhausted his administrative remedies with respect to his Title VII claims by timely filing charges with the EEOC and filing this lawsuit within ninety days of receiving a right-to-sue letter. First Am. Compl. ¶ 5. He exhausted his administrative remedies with respect to his PHRA claims by timely filing charges with the PHRC and waiting at least one year to file this lawsuit. Id. at ¶ 6.

IV.    **Discussion**

The first amended complaint raises twelve claims under Section 1981, Title VII, and the PHRA. All defendants move to dismiss Counts VII, VIII, and XII. See Partial MTD at 7. The individual defendants move to dismiss Counts I, III, V, VII, X, XI, and XII. See id. at 16, 20.

In Counts VII, VIII, and XII, Brown alleges that the defendants violated Section 1981, Title VII, and the PHRA by threatening to file and then filing a retaliatory civil action against him. First Am. Compl. ¶¶ 102-06, 107-10, 120-22. In Count I, Brown alleges that all defendants violated Section 1981 by creating a hostile work environment, discriminating against him based on his race, and retaliating against him. Id. at ¶¶ 67-73. In Counts III, V, X, and XI, Brown alleges that all defendants violated both Section 1981 and the PHRA by wrongfully suspending and terminating him. Id. at ¶¶ 80-85, 91-96, 114-16, 117-19.

Brown opposes the motion or, in the alternative, requests leave to amend his complaint to cure any deficiencies. Pl.'s Resp. in Opp. at 29-30. We consider the parties' arguments here.

### A.   Counts VII, VIII, and XII: The Civil Action in State Court

Brown alleges in Counts VII, VIII, and XII that the defendants violated Section 1981,[1]
Title VII, and the PHRA by threatening to sue Brown, and then actually filing a lawsuit against
him. All defendants move to dismiss these three counts, arguing that: (1) the communication that
Brown characterized as a "threat" of litigation was not a threat and, even if it were, such a threat
does not constitute an adverse employment action; (2) the Noerr-Pennington doctrine bars
Brown's retaliation claims; and (3) there was no existing or proposed contractual relationship
between Brown and TD Bank when TD Bank filed its lawsuit.[2] Partial MTD at 7, 9, 11. Brown
responds that: (1) the threat of litigation and eventual lawsuit by TD Bank are adverse
employment actions because they would have dissuaded a reasonable worker from making or
supporting a charge of discrimination; (2) the Noerr-Pennington doctrine does not apply to Title
VII and Section 1981 claims; and (3) Section 1981 broadly encompasses at-will employment
contracts, so a lawsuit filed after termination remains actionable. Pl.'s Resp. in Opp. at 13, 16,
18.

### 1.   Whether The Threat Of Litigation And Filing Of A Lawsuit Are Adverse Employment Actions

A prima facie case for retaliation under Section 1981 requires allegations that (1) the
plaintiff engaged in protected activity, (2) the employer took an adverse employment action

---

[1]   "All persons within the jurisdiction of the United States shall have the same right
in every State and Territory to make and enforce contracts…as is enjoyed by white citizens…"
42 U.S.C. § 1981(a). The term "make and enforce contracts" includes the "making, performance,
modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms,
and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The rights protected by
Section 1981 "are protected against impairment by nongovernmental discrimination and
impairment under color of State law." 42 U.S.C. § 1981(c).

[2]   Initially, defendants also argued that Brown (4) had failed to exhaust his administrative
remedies with respect to his claim that the civil action was retaliatory. Partial MTD at 13. But
defendants withdrew this argument in their reply. See Defs.' Reply Br. at 7 n.2 (withdrawing the
argument).

against the plaintiff, and (3) there was a causal connection between the participation in the protected activity and the adverse employment action. Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010) (citing Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006)). The same standard applies to retaliation cases under Title VII and the PHRA. See id. at 798 n.15 (citing Humphries v. CBOCS West, Inc., 474 F.3d 387, 403-04 (7th Cir. 2007), aff'd, 553 U.S. 442 (2008) (explaining that the same prima facie requirements apply to discrimination claims brought under Title VII and Section 1981); Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) (explaining that the PHRA and Title VII's anti-retaliation provisions are substantially similar and that the PHRA is interpreted identically to federal anti-discrimination laws unless there is something specifically different in its language requiring that it be treated differently)).

To determine whether a plaintiff has suffered an adverse employment action, we must inquire whether the challenged conduct was materially adverse, meaning that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). The concern is whether an employer is deterring victims of discrimination from complaining to the EEOC, courts, or employers, and "normally petty slights, minor annoyances, and simple lack of good manners" do not create such deterrence. Id. The standard is objective, and so we focus on how the "reasonable employee" would react and not a plaintiff's subjective feelings. Id. at 68-69. The significance of an alleged retaliatory act depends upon the circumstances of the case, and so we must view the act in context. Id. at 69.

This Court has previously found that an employer's threat to accuse an employee of a criminal offense "could certainly be construed as 'materially adverse.'" Walsh v. Irvin Stern's

Costumes, 2006 WL 2380379, *2-*3 (E.D. Pa. Aug. 15, 2006) (Baylson, J.) (unreported)
(reasoning in light of Burlington Northern that "common sense suggests that one good way to
discourage an employee" from bringing discrimination charges would be to threaten to bring
criminal charges against her unless the employee withdrew her discrimination claims). See also
Rattigan v. Holder, 604 F. Supp. 2d 33, 53 (D.D.C. 2009) (discussing cases to support the
conclusion that whether an action is materially adverse is determined by whether it holds a
deterrent prospect of harm, not by whether the harm comes to pass or whether any ill effects are
felt in the present). Similarly, other courts have found that the filing of a counterclaim by an
employer might well ground a retaliation claim, since an employee might choose to withdraw her
charges of discrimination rather than face counterclaims "which directly attack the integrity of
the plaintiff as well as her professional standing as an attorney." Nesselrotte v. Allegheny
Energy, Inc., 2007 WL 3147038, *12 n.25 (W.D. Pa. Oct. 25, 2007) (Fischer, J.) (unreported).
See also Parry v. New Dominion Construction, Inc., 2015 WL 540155, *7 (W.D. Pa. Feb. 10,
2015) (Schwab, J.) (unreported) (explaining that the filing of a counterclaim subjecting an
employee to potential monetary damages could dissuade a reasonable worker from pursuing a
charge of discrimination). While Nesselrotte and Parry were both in the procedural posture of a
motion for leave to amend the complaint, the reasoning applies with equal force in the procedural
posture of a motion to dismiss, since we accept the complaint's well-pled factual allegations as
true.

Considering the reasoning in Walsh, Rattigan, Nesselrotte, and Parry, we are persuaded
that threating to file a civil action and actually filing a civil action may be adverse employment
actions in light of Burlington Northern's broader perspective on what is materially adverse and
based upon a common sense approach to what might deter a reasonable employee. Threatening

to file and then filing a lawsuit are beyond the petty slights, minor annoyances, and simple lack of good manners that are insufficient to deter the reasonable worker. Litigation is expensive, time-consuming, and emotionally draining. So too is the mere threat of litigation, since the steps an individual must take when threatened with a lawsuit are often the same steps an individual must take when actually sued: locating and obtaining counsel, evaluating options for settlement or litigation, and spending time and treasure to resolve the prospective or filed claim. A reasonable worker, faced with the prospect or reality of a civil action, might well decide to abandon his charges of discrimination rather than move forward.

We therefore find, in this procedural posture of a motion to dismiss, that the first amended complaint alleges sufficient factual matter, accepted as true, to make a prima facie showing under Section 1981, Title VII, and the PHRA that TD Bank took an adverse employment action against Brown when it threatened to file, and then filed, a civil action against him in the Court of Common Pleas of Philadelphia County.

## 2.      Whether The Noerr-Pennington Doctrine Bars Plaintiff's Retaliation Claim

The Noerr-Pennington doctrine protects parties who petition government entities -- such as legislatures, administrative agencies, and the courts -- from claims arising in response to that petitioning. See Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 122 (3d Cir. 1999) (citing Eastern R.R. Presidents Conference v. Noerr Motor Freight, 365 U.S. 127 (1961) and United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965)). The Noerr-Pennington doctrine thus protects those who petition for relief through the courts. California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).

Although this doctrine arose in the antitrust arena, it has been extended by analogy to petitioning in other contexts. We, Inc. v. City of Philadelphia, 174 F.3d 322, 326-27 (3d Cir. 1999). The doctrine does not, however, protect "sham" petitioning -- meaning petitions or lawsuits that are "nothing more than an attempt to interfere directly with the business relationships of a competitor." Cheminor Drugs, Ltd., 168 F.3d at 122; Professional Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 56 (1993) ("PRE"). We have previously held that lawsuits are a form of protected petitioning under Noerr-Pennington, and that if the facts relevant to determining Noerr-Pennington's applicability are undisputed and contained within the record, we may decide the issue on a motion to dismiss. See Trustees of the Univ. of Pa. v. St. Jude Children's Research Hosp., 940 F. Supp. 2d 233, 241-43 (E.D. Pa. 2013).

Litigation is a "sham" within the meaning of Noerr-Pennington if it is objectively baseless, meaning that no reasonable litigant could realistically expect success on the merits. PRE, 508 U.S. at 60. If a reasonable litigant could conclude that its suit is reasonably calculated to elicit a favorable outcome, then the suit is protected by Noerr-Pennington. Id. If, however, the challenged litigation is objectively meritless, then the court may consider the litigant's subjective motivation. Id. A plaintiff must first disprove the challenged lawsuit's objective legal viability before we may consider the subjective components of the sham litigation. Id. at 61.

We first inquire whether TD Bank's lawsuit against plaintiff was objectively baseless. See Partial MTD Ex. C.[3]

In TD Bank's suit against Brown, it alleged that Brown "improperly disposed of some confidential customer documents, and began placing into a bag a large number of documents, many of which appeared to contain confidential and proprietary information." Partial MTD Ex.

---

[3] We may consider the civil action because Brown's claims are based on it, the defendants attached it as an exhibit to their partial motion to dismiss, and no party disputes its authenticity. Pension Benefits Guar. Corp., 998 F.2d at 1196.

C at 6. TD Bank further alleged that Brown refused Badecki's request to return the documents he put in his bag, fled the workplace, and wrongfully retained both a TD Bank credit card and a RSA token. Id. TD Bank also alleged that it had email evidence of Brown's retention of TD Bank's documents. Id. at 7-8.

By Brown's own account, he did not comply with Badecki's request to return the papers he put in his bag and never signed an affidavit or certification that he had not improperly retained or disseminated TD Bank's confidential or propriety documents or information, as TD Bank requested he do.[4] In light of these facts, a reasonable litigant in TD Bank's position could expect success on the merits and that litigation predicated on such facts could lead to a favorable outcome, namely, either the return of the documents or assurances that there were no documents left to return. Noerr-Pennington's protections do not extend to sham litigation, but a reasonable litigant in TD Bank's position would have had an objective basis for filing the lawsuit in question. Since TD Bank's civil action is not objectively meritless, we do not inquire about TD Bank's subjective motivations in filing the action. See, e.g., PRE, 508 U.S. at 60 ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation."); see also Trustees of the Univ. of Pa. v. St. Jude Children's Research Hosp., 940 F. Supp. 2d at 243 (explaining that the question of intent would only be relevant if the court were to find that the action itself was a sham). Since we find that TD Bank's civil action filed against

---

[4] Brown alleges that as he was clearing off his desk after Badecki informed him of his suspension, she accused him of trying to take loan documents. First Am. Compl. ¶¶ 52-54. Although Brown told Badecki that the papers he had placed in his bag were personal papers, she insisted that he give her his bag, but he refused. Id. at ¶ 55. After TD Bank fired Brown for, among other reasons, removing TD Bank documents from the workplace after his suspension, it asked him to sign an affidavit or certification preventing him from disseminating documents or information related to his work at TD Bank or contacting TD Bank's clients and customers. Id. at ¶¶ 63-64. Because TD Bank would not agree to Brown's amendments providing exceptions for his ongoing EEOC proceedings, Brown refused to sign. Id. at ¶¶ 65-66.

Brown in the Court of Common Pleas was not a sham, it is entitled to protection under the Noerr-Pennington doctrine. We will therefore dismiss Counts VII, VIII, and XII of the first amended complaint with prejudice. We omit further discussion of these claims and the parties' arguments with respect thereto.

### B.     Counts I, III, and V: Personal Liability Under Section 1981

In Counts I, III, and V Brown alleges that the defendants created a hostile work environment and wrongfully suspended and wrongfully terminated him, all in violation of Section 1981. The individual defendants move to dismiss all three counts, arguing that they fail to set forth allegations sufficient to demonstrate that they were personally involved in any discriminatory conduct against Brown or that they either intentionally caused TD Bank to infringe upon Brown's Section 1981 rights or authorized, directed, or participated in any infringing conduct. Partial MTD at 16-17. Brown responds that his factual allegations raise the plausible inference that there is an affirmative link causally connecting the individual defendants with the alleged discriminatory actions. Pl.'s Resp. in Opp. at 24.

Although claims against individual supervisors are not permissible under Title VII, individual liability is possible under Section 1981 if the defendants intentionally cause an infringement of the rights protected by Section 1981, regardless of whether the employer-entity may be held liable. Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001); Weldon v. Kraft, Inc., 896 F.2d 793, 796 (3d Cir. 1990); Al-Khazraji v. Saint Francis Coll., 784 F.2d 505, 518 (3d Cir. 1986), aff'd, 481 U.S. 604 (1987). Individuals may be held personally liable if they intentionally caused the employer-entity to infringe upon a plaintiff's Section 1981 rights or if they authorize, direct, or participate in the alleged discriminatory conduct. Al-Khazraji, 784 F.2d at 518.

Because the individual defendants' alleged actions are pertinent herein, we briefly review the first amended complaint's specific allegations as to each defendant.

Brown alleges that Lin placed him on an unwarranted PIP after supervising him for only one month; was generally hostile toward him; attended the March 17, 2014 meeting with Matthew where he was asked how they were discriminating against him; and expressed her disappointment at that meeting that Brown could not be reprimanded based on credit reports that were not yet due. First Am. Compl. ¶¶ 28-30, 36-39. Brown avers that Mindick was rude and condescending toward him; treated him differently than his non-black coworkers; selectively enforced policies against him; implied that he was scared of Brown punching him based on Brown's race; was hostile toward and harassed him; placed him on an unwarranted PIP; undermined him at work by failing to provide him with proper support, lucrative accounts, adequate time to complete his assignments, and timely responses to emails, and so forth. Id. at ¶¶ 22-29.

Brown claims that Matthew belittled and ridiculed him in a meeting about his new PIP; asked him in a follow-up meeting why he felt he was being discriminated against; criticized him for not completing assignments ahead of schedule; and ordered Lin to give him more work and revise his PIP. Id. at ¶¶ 35-39. Brown alleges that Badecki did not follow up on his April 7, 2014 email expressing concerns about Lin and Matthew's conduct; informed him that he was being suspended because of the investigation into his conduct at the April 10, 2014 meeting; drafted his suspension letter before meeting with him on April 15, 2014; accused him of trying to take TD Bank loan documents and insisted that he give her his bag; and did not investigate his March 11, 2014 discrimination complaint. Id. at ¶¶ 40, 50-57.

       1.       **Count I: Hostile Work**
                      **Environment, Racial Discrimination, Retaliation**

Brown alleges that all of the individual defendants, as part of TD Bank's management, subjected him to ongoing and pervasive harassment and hostility, treated him in a demeaning manner, gave him pretextual discipline, and personally participated in discriminatory and retaliatory harassment against him in the last ten months of his employment. First Am. Compl. ¶¶ 68-72.

We use the same analysis to assess the substantive merits of a hostile work environment claim under Section 1981 as we would in the Title VII context. See, e.g., Verdin v. Weeks Marine Inc., 124 F. App'x 92, 96 (3d Cir. 2005) (non-precedential) (noting that the statute of limitations was the only distinction between Section 1981 and Title VII with respect to a hostile work environment claim). To establish a hostile work environment, a plaintiff must show that (1) he suffered intentional race discrimination, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected him, (4) the discrimination would detrimentally affect a reasonable person of the same race in that position, and (5) there is respondeat superior liability. Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990) (discussing these factors in the sex discrimination context); Woodard v. PHB Die Casting, 255 F. App'x 608, 609 (3d Cir. 2007) (non-precedential). The discriminatory conduct must be so extreme as to amount to a change in the terms or conditions of employment, and offhanded comments or isolated incidents, unless extremely serious, are insufficient to sustain a hostile work environment claim. Caver v. City of Trenton, 420 F.3d 243, 262-63 (3d Cir. 2005). We must look at the totality of the circumstances, including the frequency of the alleged conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with the plaintiff's work performance. Id.

Brown has not pled sufficient factual matter, accepted as true, to demonstrate that any of the individual defendants intentionally infringed on his Section 1981 rights by causing TD Bank to infringe on his rights or by authorizing, directing, or participating in a hostile work environment. With respect to Lin, Brown only generally alleges that she participated in undermining conduct and mentions only two discrete instances of allegedly harassing conduct: placing him on a PIP and noting with disappointment that his credit reports were not yet due. As to Matthew, Brown alleges only that he belittled and ridiculed him in one meeting and asked him about his allegations of discrimination in another. Regarding Badecki, Brown only alleges that she did not investigate his claims of discrimination, informed him of his suspension, and accused him of taking loan documents. These allegations against Lin, Matthew, and Badecki do not plead the type of severe, extreme, or pervasive conduct that would suggest they are personally liable under Section 1981 for creating a hostile work environment. With respect to Mindick, the allegations are more detailed and indicate a longer duration of alleged undermining conduct, but those allegations also do not raise the inference that Mindick intentionally violated Brown's Section 1981 rights or caused TD Bank to do so. Mindick's individual conduct was not so extreme, severe, or pervasive as to ground individual liability against him for creating a hostile work environment.

We will therefore dismiss Count I with respect to the individual defendants Lin, Matthew, Mindick, and Badecki, but without prejudice to refiling a second amended complaint.

## 2.     Counts III and V: Wrongful Suspension And Termination

Brown alleges that one month after notifying the defendants of his intent to file an EEOC charge, and one week after complaining to Badecki that Matthew and Lin were treating him with hostility, he was suspended for pretextual reasons. First Am. Compl. ¶ 82. Brown also alleges

19

that the individual defendants "all personally participated in the retaliatory and discriminatory decision to" suspend him because of his race and complaints about race discrimination and retaliation. Id. at ¶ 84. Brown further alleges that his subsequent termination was pretextual and retaliatory and that the individual defendants "all personally participated in the retaliatory and discriminatory decision" to terminate him. Id. at ¶¶ 93, 95.

Brown's first amended complaint contains sufficient factual matter, accepted as true, to support a reasonable inference that the individual defendants intentionally caused the alleged violation of Brown's rights under Section 1981 by participating in or otherwise directing his suspension and eventual termination. The individual defendants' alleged acts, taken in light of their supervisory authority, render plausible Brown's allegations that they caused TD Bank to wrongfully suspend or terminate him, especially given the temporal proximity between the alleged discrimination and retaliation and adverse employment actions. We will therefore deny the individual defendants' motion to dismiss Counts III and V.

### C.      Counts X and XI: Individual Liability Under Section 955(e) Of The PHRA

Brown alleges in Counts X and XI that the defendants violated the PHRA by wrongfully suspending and terminating him. The individual defendants move to dismiss these counts, arguing that the first amended complaint fails to set forth allegations sufficient to demonstrate that they are individually liable under Section 955(e) of the PHRA for aiding, abetting, inciting, compelling, or coercing unlawful discriminatory practices. Partial MTD at 20. Brown responds that his factual allegations raise the plausible inference that the individual defendants are supervisory employees who engaged in discriminatory or retaliatory conduct against him. Pl.'s Resp. in Opp. at 29.

Section 955(e) of the PHRA forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice…" 43 Pa. Cons. Stat. § 955(e). Based on the theory that only supervisory employees can share the discriminatory purpose and intent of the employer, such supervisors can be held personally liable under an aiding and abetting theory for their own direct acts of discrimination or their failure to take action to prevent further discrimination. Holocheck v. Luzerne Cty. Head Start, Inc., 385 F. Supp. 2d 491, 496-97 (M.D. Pa. 2005); see also Dici v. Commonwealth of Pa., 91 F.3d 542, 552 (3d Cir. 1996) (explaining that individual employees can be held liable under the PHRA but not Title VII); Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C., 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998) (finding that plaintiff had adequately pled a Section 955(e) claim by averring that defendants were supervisors with whom she spoke about the firm's disability policies and who later terminated her).

In the procedural posture of a motion to dismiss, Brown's allegations regarding the individual defendants' supervisory roles, alleged discriminatory or retaliatory acts, and his eventual suspension and termination, suffice to raise the reasonable inference that the individual defendants Lin, Mindick, Mathew, and Badecki could be found plausibly liable under Section 955(e). We will therefore deny their motion to dismiss Counts X and XI.

## V.     Conclusion

Although we find that threatening to file, and then filing, a civil action may constitute an adverse employment action in light of Burlington Northern's definition of materially adverse and based upon a common sense approach to what might deter a reasonable employee, the Noerr-Pennington doctrine protects the defendants with respect to the civil action because we find the

21

lawsuit was not objectively baseless in light of Brown's actions during and after his suspension and termination. We will therefore grant the defendants' motion to dismiss Counts VII, VIII, and XII of the first amended complaint with prejudice. We will grant the individual defendants' motion to dismiss Count I because the first amended complaint does not contain sufficient factual matter, accepted as true, to demonstrate the kind of severe and pervasive discriminatory conduct that would create a hostile work environment, but we dismiss Count I without prejudice to refiling a second amended complaint.

We will deny the individual defendants' motion to dismiss Counts III, V, X, and XI because Brown's factual averments regarding the individual defendants' supervisory positions and their alleged discriminatory and retaliatory acts, combined with his eventual suspension and termination, permit the reasonable inference that they may have either caused, participated in, aided, or abetted TD Bank's decision to suspend and then terminate him.

An appropriate Order follows.

BY THE COURT:

   /s/ Stewart Dalzell, J.
Stewart Dalzell, J.

22